# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Atif Khawaja, P.C.
To Call Writer Directly:
+1 212 446 4749
atif.khawaja@kirkland.com

601 Lexington Avenue
New York, NY 10022
United States

+1 212 446 4800

www.kirkland.com

Facsimile:
+1 212 446 4900

June 19, 2018

**By Email**

Honorable Gerald Lebovits
Supreme Court of the State of New York
Civil Branch, New York County
60 Centre Street, Room 345
New York, New York 10007

Re:     *L.I. City Ventures LLC v. Urban Compass, Inc.*, Index No. 151148/2018

Dear Justice Lebovits:

We write on behalf of Defendants Urban Compass, Inc. ("Compass") and Jessica Meis in
the above-captioned action.  Further to the Court's request at the June 15 hearing in this matter,
we write to oppose Plaintiff L.I. City Ventures LLC's ("Modern Spaces") application for a
Temporary Restraining Order pursuant to CPLR 6301, as Modern Spaces has not met the heavy
burden that such extraordinary relief demands.

As the Court may recall, the relevant facts are straightforward and should not be in dispute:

- Ms. Meis was an independent contractor real estate agent at Modern Spaces for less than
  fifteen months, where she marketed residential apartments in Queens.  *See* Exhibit 1, June
  18, 2018 Affidavit of Jessica Meis ("Meis Affidavit") ¶ 3.

- At no time did Ms. Meis enter a non-compete agreement with Modern Spaces, although
  her independent contractor agreement contained other restrictive covenants.  Specifically,
  her agreement included a non-solicit provision that extended to employees and staff--but
  not clients--of Modern Spaces for the "period ending upon [her] termination with Modern
  Spaces."  *See* NYSCEF No. 25 (the "Agreement") § 10(b).  Additionally, the Agreement
  contained a non-disclosure provision that barred Ms. Meis from using "any information to
  which [Ms. Meis] ha[d] access at Modern Spaces and/or which is related to the business of
  Modern Spaces," which it defined as "proprietary information."  *Id.* at §10(a).

- When Ms. Meis left Modern Spaces in mid-January 2018, she sent around 50 emails from
  her Modern Spaces email account to her personal email account.  As stated in the attached

Beijing Boston Chicago Hong Kong Houston London Los Angeles Munich Palo Alto San Francisco Shanghai Washington, D.C.

## KIRKLAND & ELLIS LLP

The Hon. Gerald Lebovits
June 19, 2018
Page 2

affidavit from Ms. Meis, these emails contained her personal information, not confidential information belonging to Modern Spaces.  *See* Exhibit 1, Meis Aff. ¶¶ 8-9.

- Modern Spaces commenced this action on February 6, 2018, claiming, among other things, that Ms. Meis' emails contained protectable trade secrets belonging to Modern Spaces.  *See* NYSCEF No. 2 ¶ 2.  In response to the lawsuit, in-house counsel for Compass sent counsel for Modern Spaces a summary of the emails that Ms. Meis had forwarded so that both Compass and Ms. Meis could better understand what, if any, of the information in the emails was confidential to Modern Spaces and should be isolated and returned.  Modern Spaces' counsel never responded to identify any trade secrets within the possession of Ms. Meis or Compass.  *See* Exhibit 2, June 18, 2018 Affirmation of Timothea Letson ¶ 4.

- On June 12, 2018, ***more than five months after Ms. Meis sent the emails at issue***, Modern Spaces moved for a TRO.  *See* NYSCEF No. 22.  At the June 15, 2018 hearing, the Court invited Modern Spaces to narrowly tailor and revise the TRO.  After multiple iterations, Plaintiff requested an order that: (i) temporarily restrains Compass from using Modern Spaces' "proprietary information" (as that term is defined in the Agreement) that Ms. Meis emailed to herself in January 2018; (ii) temporarily restrains Ms. Meis from soliciting Modern Spaces' clients that she communicated with while at Modern Spaces and for which Modern Spaces had an exclusive listing at the time Ms. Meis worked there; (iii) temporarily restrains Ms. Meis from using Modern Spaces' "proprietary information" as that term is used in the Agreement; and (iv) directs Defendants to deliver to Modern Spaces counsel all proprietary information as that term is used in the Agreement.  This Court has already struck section (iii) of the original order, which purported to temporarily restrain Ms. Meis from soliciting Modern Spaces' employees.

### A.    Legal Standard

"A temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears that immediate and irreparable injury, loss or damage will result unless the defendant is restrained before the hearing can be had."  CPLR 6301.  A court must deny an application for a TRO if a plaintiff "fail[s] to demonstrate a probability of success on the merits in the underlying action . . . and . . . that she will suffer immediate and irreparable harm."  *Sosa v. Meyers*, 831 N.Y.S.2d 356 (Sup. Ct. 2006) (declining to issue TRO).  Injunctive relief is a "drastic remedy."  *Id.*

### B.    This Court should deny the TRO.

Modern Spaces has not satisfied its heavy burden, and no TRO should issue here.

*First*, the more than five month delay between the time that Ms. Meis sent the emails at issue (from a Modern Spaces email account) and the instant motion for expedited relief

# KIRKLAND & ELLIS LLP

The Hon. Gerald Lebovits
June 19, 2018
Page 3

demonstrates the absence of any "immediate and irreparable injury, loss or damage." CPLR 6301. Courts routinely deny similar requests for injunctive relief when faced with delays. *See, e.g., Whipp Creations Inc. v. Brooks Fashion Stores Inc*., No. 25568/87, 1988 WL 391520, at *2 (Sup. Ct. Nov. 28, 1988) (holding that plaintiff's "delay negates the contention that preliminary relief is necessary to prevent irreparable harm to plaintiff."); *United for Peace & Justice v. Bloomberg*, 783 N.Y.S.2d 255, 259 (Sup. Ct. 2004) (holding that plaintiff's three month delay in moving for a preliminary injunction was "inexcusable and inequitable"). At the hearing, Modern Spaces attempted to justify its delay on the basis of unsuccessful settlement negotiations. But ongoing settlement negotiations do not block, let alone excuse a party from moving for injunctive relief. What is more, the fact that Plaintiff's TRO papers do not identify any intervening harm to Modern Spaces in the last five months confirms that no immediate, irreparable harm exists, and the TRO should be denied.

*Second*, Modern Spaces has not met its burden of showing that the email information Ms. Meis forwarded to herself is a protectable trade secret. *See, e.g., Samuel-Rozenbaum USA, Inc. v. Felcher,* 292 A.D.2d 214, 215 (1st Dep't 2002) (affirming denial of preliminary injunction when plaintiff did not identify a protectable trade secret); *Bus. Networks of N.Y., Inc. v. Complete Network Sols. Inc.*, 265 A.D.2d 194, 194 (1st Dep't 1999) (affirming denial of preliminary injunction where plaintiff did not establish a likelihood of success on the merits because the allegedly misappropriated information was not shown to be a trade secret). According to Ms. Meis' sworn affidavit, none of the information Modern Spaces claims as misappropriated belongs to Modern Spaces. *See* Exhibit 1, Meis Aff. ¶ 9. To the contrary, the emails consisted of information and contacts personal to Ms. Meis, transaction records she needed in order to maintain her broker license under New York law, and pending contracts that she needed to close. *See id.* ¶ 8. Indeed, this Court has previously held that such information is convertible property, and a real estate firm may be subject to the claim of conversion when it withholds such information from a departing agent. *See Shmueli v. Corcoran Grp.*, 802 N.Y.S.2d 871, 875-79 (Sup. Ct. 2005).

*Third*, the non-disclosure provision that Plaintiff invokes as the basis for its claim, Agreement § 10(a), is impermissibly overbroad and operates as an unenforceable restrictive covenant under the seminal New York Court of Appeals decision in *Columbia Ribbon*. There, the employer invoked a similarly worded covenant against a departing employee, with the provision stating that the employee could "not divulge any other information that he has or shall have acquired during his period of employment, insofar as the same is or may be necessary to protect the Company's business." *Columbia Ribbon & Carbon Mfg. Co., Inc. v. A-1-A Corp.*, 42 N.Y.2d 496, 498 (1977). The Court of Appeals struck this provision as unenforceable because it was too "broad-sweeping" and did "no more than baldly restrain competition." *Id.* at 496. The same is true here. Section 10(a) of the Agreement purports to protect "any information to which [Ms. Meis] ha[d] access at Modern Spaces and/or which is related to the business of Modern Spaces." Because the non-disclosure provision in Section 10(a) is not enforceable, it cannot sustain a TRO.

## KIRKLAND & ELLIS LLP

The Hon. Gerald Lebovits
June 19, 2018
Page 4


Finally, even if a TRO could be appropriate here -- and none is -- the proposed TRO as narrowed and revised by Plaintiff at the June 15 hearing remains grossly overbroad:

- Section (i) of the TRO bars Compass from disclosing any "proprietary information" (as defined in the Agreement) that Ms. Meis emailed to herself in January 2018, Section (iv) bars Ms. Meis from disclosing any "proprietary information," and  section (v) directs defendants to return such "proprietary information" to Plaintiff.  All of these requests are overbroad in view of *Columbia Ribbon* given their reliance upon an unenforceable definition of "proprietary information."  That alone should foreclose Plaintiff's requests. Furthermore, Plaintiff has not established that any protectable Modern Spaces trade secrets are within the possession of Ms. Meis and/or Compass, and its attempt to keep the personal information of Ms. Meis is potentially violative of *Shmueli*.  802 N.Y.S.2d at 875-79.

- Section (ii) of the TRO restrains Ms. Meis from soliciting certain clients of Modern Spaces. Plaintiff has not identified any authority for such an obligation, and none exists.  Lest there be any doubt, the Agreement does not include any restriction on Ms. Meis's ability to contact Modern Spaces' customers, and the no-solicit provision that does exist expired upon her termination.  *See* Agreement § 10(b).  Finally, section (ii) of the revised TRO is also unworkable because Ms. Meis is not aware of all of the individuals that had exclusive agreements with Modern Spaces during her tenure there.

The Court should accordingly deny Plaintiff's TRO application in full.

*     *     *     *

Defendants remain available at the Court's convenience to discuss this matter.

Respectfully submitted,

Atif Khawaja, P.C.


Enclosures

cc:     All counsel of record (by Email)

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| L.I. CITY VENTURES LLC, d/b/a MODERN SPACES,<br><br>               *Plaintiff,*<br><br>v.<br><br>URBAN COMPASS, INC. d/b/a/ COMPASS, and JESSICA MEIS,<br><br>               *Defendants.* | Index No.: 151148/2018<br><br>**AFFIDAVIT OF JESSICA MEIS** |

STATE OF NEW YORK     )
                             ) ss.:
COUNTY OF NEW YORK  )

JESSICA MEIS, being duly sworn, deposes and says:

1.      I am over 18 years of age and am of sound mind and otherwise competent to make this Affidavit. This Affidavit is based on my personal knowledge.

2.      I am a licensed real estate agent at Urban Compass, Inc. ("Compass"), and I primarily operate in Long Island City. I joined Compass on January 23, 2018.

3.      I previously worked as an independent contractor real estate agent at Modern Spaces from September 2016 until January 2018.

4.      I joined Compass on January 23, 2018 because I was excited about the opportunity to associate with the Compass brand and grow my business as the company grows in the New York metropolitan area.

5.      I am a single mother and support myself and my son exclusively with my income from Compass and commissions.

6.      I had an Independent Contractor Relationship Agreement with Modern Spaces, *see*

NYSCEF Doc. No. 25 (the "Agreement"), that I understand contained certain obligations.

7.      Specifically, the Agreement contained a provision requiring me to turn over to Modern Spaces all information that belonged to Modern Spaces and not use or disclose it following my departure. *See* Agreement § 10(a). I have complied with that obligation as I understand it, and I am not in possession of any information that belongs to Modern Spaces.

8.      In January 2018, before I left Modern Spaces, I emailed myself certain personal information that belonged to me, and not Modern Spaces, including:

    (a)    Records of transactions which I need in order to maintain my status as a licensed broker under New York law;

    (b)    Personal contacts that I have developed over the course of my career as an agent; and

    (c)    Pending contracts that I needed to close.

9.      I understand that Modern Spaces has identified a few documents in my possession that they claim are confidential or belong to them, but they are mistaken:

    (a)    "Buyers List.xlsx" (*see* Affidavit of Eric Benaim, NYSCEF No. 23 ¶ 18): This is a list I created to keep track of those clients who inquired about working with me to help them find a home to buy. This list is not confidential and does not belong to Modern Spaces because these contacts were sourced by me through Street Easy, Facebook and other similar sources and were not given to me by Modern Spaces.

    (b)    "CMS Data.xlxs" (*see id.* ¶ 18): This is a list I created to keep track of my closed deals, and if I had been paid my commission due from the particular deal. This list is not confidential and does not belong to Modern Spaces because this was my personal tracking sheet to ensure I was paid appropriately for my work.

    (c)    Lists of clients, client names, and Google Contacts (*see id.* ¶ 20): These were my own personal contacts. These lists were not confidential and do not belong to Modern Spaces, because I personally sourced these clients through my own personal contacts and experience, Street Easy, Facebook and other similar sources. Modern Spaces in no way provided these contacts to me.

    (d)    Exclusive listing agreements between Modern Spaces and various owners of property (*see id.* ¶ 21): I believe the documents referred to as "exclusive listing agreements" are in fact documents relating to my sale of properties that were either closed before I left Modern Spaces or sales that were completed through Modern Spaces after I left for which I received a

2

commission. They were not confidential and do not belong to Modern Spaces because they are records of transactions that I need for my records to properly maintain my status as a licensed real estate broker.

(e) Modern Spaces' listing photographs (*see id.* ¶ 23): These photographs are not associated with any of my prior sales or current listings, and I am not familiar with them. I did not take these photographs from Modern Spaces, nor did I provide them to Compass.

10. No one at Compass ever instructed me to bring over any Modern Spaces' confidential information or information that belongs to Modern Spaces. I alone chose to send the emails above to myself. I have shared the contents of these emails only with my counsel and Compass legal and have otherwise not forwarded them to anyone or discussed them with anyone.

11. In fact, before joining the Company, Compass specifically instructed me to not disclose any confidential information I might have belonging to Modern Spaces. Furthermore, my contract with Compass and the Agent Handbook prohibit me from disclosing to Compass any confidential information or information that belongs to another brokerage. Specifically, my contract with Compass requires me to "fully comply with restrictions set forth in any third-party contract (for example, with Agent's prior brokerage firm) . . . including, but not limited to, restrictions regarding the (a) disclosure of confidential information or (b) solicitation or recruitment of employees and/or independent contractors.'" I understand that my relationship with Compass may be terminated for violating these policies.

12. I swear under penalty of perjury that the foregoing is true and correct.

3

Jessica Meis

Signed and sworn before me on this 18th day

of June 2018.

Notary Public

# EXHIBIT 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

L.I. CITY VENTURES LLC, d/b/a MODERN
SPACES,

                *Plaintiff,*

    v.

URBAN COMPASS, INC. d/b/a/ COMPASS,
and JESSICA MEIS,

                *Defendants.*

Index No.: 151148/2018

**AFFIRMATION OF TIMOTHEA
G.P. LETSON**

---

I, TIMOTHEA G.P. LETSON, an attorney duly admitted to practice before the courts of

the State of New York and not a party to this action, hereby affirm the following under penalty of

perjury:

1.      I am in-house counsel for Defendant Urban Compass, Inc. ("Compass") and serve

as its General Counsel - Litigation & Employment.

2.      On February 16, 2018, Plaintiff Modern Spaces sued Compass and Ms. Jessica

Meis.  In response to that lawsuit, another Compass in-house counsel and I worked with Ms. Meis

to review the information that Ms. Meis forwarded to herself at the time of her departure from

Modern Spaces.  At that time and since, I and others at Compass instructed Ms. Meis not to share

the emails with anyone else at Compass.

3.      As per its Agent Handbook and other Compass policies, Compass is not interested

in any confidential information belonging to Modern Spaces.

4.      In response to the lawsuit, I personally sent external counsel for Modern Spaces a

summary of the emails that Ms. Meis had forwarded to herself so that both Compass and Ms. Meis

could better understand what, if any, of the information in the emails was confidential or belonged

to Modern Spaces.  Although I followed up with counsel for Modern Spaces multiple times, no

representative from Modern Spaces ever identified any specific confidential information that they wanted Compass and / or Ms. Meis to delete, isolate, or return. Attached as Exhibit 1 is a true and correct copy of this email exchange between Modern Spaces' counsel and me.

5.    In response to Modern Space's allegations in its complaint that certain pictures identified as Exhibit A therein belonged to Modern Spaces, Compass has taken down those pictures from its website. None of those pictures appear on the Compass website.

6.    I affirm under penalty of perjury that the foregoing is true and correct.


_____
Timothea G.P. Letson, Esq.

# EXHIBIT 1

# COMPASS

Timothea Letson <timothea.letson@compass.com>

---

### Re: LI City Ventures LLC d/b/a Modern Spaces v. Urban Compass et al.

---

**Timothea Letson** <timothea.letson@compass.com>
To: "Lavaia, Marc A." <mlavaia@wbny.com>
Cc: Valentina Shenderovich <valentina@compass.com>, "Coyle, Andrew T." <acoyle@wbny.com>

Apologies for the misunderstanding.  We understood that after you and your client reviewed the document list, we could have a discussion about the particular documents your client was conc

If that is still something you would like to do, please let us know.

Thanks,
Timothea

On Tue, May 22, 2018 at 7:06 PM, Lavaia, Marc A. <mlavaia@wbny.com> wrote:
Timothea I forwarded the document to my client, but frankly we were expecting an offer (which is what was promised and expected).

I will speak to my client about another very brief extension.

Marc A. Lavaia
Partner
Warshaw Burstein, LLP
555 Fifth Avenue, 11th Fl
New York, New York 10017
Tel: 212.984.7740
mlavaia@wbny.com
www.wbny.com

On May 22, 2018, at 7:05 PM, Timothea Letson <timothea.letson@compass.com> wrote:

Marc -

I'm sorry that we have been able to connect regarding Modern Space's thoughts on the list of documents we provided.  As the extension to answer or otherwise respond ends tomorr
extension of time so we may properly respond to your client's Complaint.

Thank you,
Timothea

On Mon, May 21, 2018 at 1:46 PM, Timothea Letson <timothea.letson@compass.com> wrote:
Marc -

Hope you had a good weekend.

Just checking in to see if you've had a chance to look over the document list we sent.

Thanks,
Timothea

On Thu, May 17, 2018 at 3:01 PM, Timothea Letson <timothea.letson@compass.com> wrote:
Marc -

Just checking in to see if you've had a chance to review the document list.

-Timothea

On Fri, May 11, 2018 at 3:45 PM, Timothea Letson <timothea.letson@compass.com> wrote:
Marc -

Attached please find the document list we discussed on Tuesday.

Look forward to speaking to you about it next week.

Hope you have a good weekend,
Timothea

**Timothea Letson**
General Counsel - Litigation & Employment
Legal

90 Fifth Avenue, 3rd Floor

New York NY 10011
m: 330.719.2295

# COMPASS

NEW YORK | BROOKLYN | EAST HAMPTON | BRIDGEHAMPTON | SOUTHAMPTON | SAG HARBOR | WASHINGTON DC | CHEVY CHASE | ARLINGTON | MCLEAN | BOSTON | CAMBRIDGE | MIAMI | COCONUT GROVE
BARBARA | BASALT | ASPEN | SAN FRANCISCO | NEWPORT BEACH | NAPLES | CHICAGO | DALLAS | SAN DIEGO | SEATTLE

On Wed, May 9, 2018 at 5:46 PM, Valentina Shenderovich <valentina@compass.com> wrote:
Thanks. Please see executed.

**Valentina Shenderovich**
Assistant General Counsel
Litigation & Compliance

---

90 Fifth Avenue 3rd Floor
New York, NY 10011

# COMPASS

NEW YORK | BROOKLYN | EAST HAMPTON | BRIDGEHAMPTON | SOUTHAMPTON | SAG HARBOR | WASHINGTON DC | CHEVY CHASE | BOSTON | CAMBRIDGE | MIAMI | COCONUT GROVE | BEVERLY HILLS | M SAN FRANCISCO

On Wed, May 9, 2018 at 5:18 PM, Coyle, Andrew T. <acoyle@wbny.com> wrote:

> Counsel:
>
> Please see the attached stipulation.
>
> Regards
>
> Andrew Coyle
>
> ---
>
> **From:** Lavaia, Marc A.
> **Sent:** Wednesday, May 09, 2018 4:57 PM
> **To:** Timothea Letson; Valentina Shenderovich
> **Cc:** Coyle, Andrew T.
> **Subject:** RE: LI City Ventures LLC d/b/a Modern Spaces v. Urban Compass et al.
>
> Yes, my colleague Andy has been tied up but will be drafting and sending.
>
> Best,
>
> <image002.jpg>    Marc A. Lavaia  ·  Partner
>                    Warshaw Burstein, LLP
>                    555 Fifth Avenue  ·  New York, NY 10017  ·  www.wbny.com
>                    Direct Telephone:  212-984-7740  ·  Facsimile:  212-972-9150
>                    E-Mail:  mlavaia@wbny.com
>
> **From:** Timothea Letson [mailto:timothea.letson@compass.com]
> **Sent:** Wednesday, May 09, 2018 4:35 PM
> **To:** Valentina Shenderovich <valentina@compass.com>
> **Cc:** Coyle, Andrew T. <acoyle@wbny.com>; Lavaia, Marc A. <mlavaia@wbny.com>
> **Subject:** Re: LI City Ventures LLC d/b/a Modern Spaces v. Urban Compass et al.
>
> Marc & Andrew -
>
> We just wanted to confirm that your office is putting together the extension and to let you know that the list of documents will be coming over tomorrow or Friday (hopefully and want to make sure this is done correctly.
>
> Thanks much,
>
> Timothea
>
> **Timothea Letson**
>
> General Counsel - Litigation & Employment
>
> Legal
>
> 90 Fifth Avenue, 3rd Floor
>
> New York NY 10011
>
> m: 330.719.2295
>
> # COMPASS

NEW YORK | BROOKLYN | EAST HAMPTON | BRIDGEHAMPTON | SOUTHAMPTON | SAG HARBOR | WASHINGTON DC | CHEVY CHASE | ARLINGTON | MCL GROVE | BEVERLY HILLS | MALIBU | PASADENA | MONTECITO | SANTA BARBARA | BASALT | ASPEN | SAN FRANCISCO | NEWPORT BEACH | NAPLES | CHI

On Tue, May 8, 2018 at 12:53 PM, Valentina Shenderovich <valentina@compass.com> wrote:

Marc,

Thank you for the call.  We will send over the list of documents by tomorrow (we need to prepare the file today).

In the meantime -- @Andrew - would you kindly provide another 2-week extension?

Thanks,

Valentina

**Valentina Shenderovich**

Assistant General Counsel

Litigation & Compliance

90 Fifth Avenue 3rd Floor
New York, NY 10011

COMPASS

NEW YORK | BROOKLYN | EAST HAMPTON | BRIDGEHAMPTON | SOUTHAMPTON | SAG HARBOR | WASHINGTON DC | CHEVY CHASE | BOSTON | CAMBRIDGE | MIAMI | MALIBU | PASADENA | MONTECITO | SANTA BARBARA | BASALT | ASPEN | SAN FRANCISCO

On Thu, Apr 26, 2018 at 8:56 AM, Valentina Shenderovich <valentina@compass.com> wrote:

Hi Andrew,

Could you please send us the final stip that was filed?

Thanks!

**Valentina Shenderovich**

Assistant General Counsel

Litigation & Compliance

90 Fifth Avenue 3rd Floor
New York, NY 10011

COMPASS

NEW YORK | BROOKLYN | EAST HAMPTON | BRIDGEHAMPTON | SOUTHAMPTON | SAG HARBOR | WASHINGTON DC | CHEVY CHASE | BOSTON | CAMBRIDGE | MIAM | MALIBU | PASADENA | MONTECITO | SANTA BARBARA | BASALT | ASPEN | SAN FRANCISCO

On Tue, Apr 24, 2018 at 1:20 PM, Valentina Shenderovich <valentina@compass.com> wrote:

Thanks!  Executed attached.